260 N.J. Super. 26 (1992)
614 A.2d 1367
EVISOO SUH, PLAINTIFF,
v.
HERMAN DENNIS, AUGUSTUS PALMER, AND SERVICE SALES, INC., DEFENDANTS. CHARLES MOON, ET AL., PLAINTIFF,
v.
HERMAN DENNIS, ET AL., DEFENDANTS. KIM H. SUH, PLAINTIFF,
v.
HERMAN DENNIS, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
June 4, 1992.
*27 Robert E. Brenner, for plaintiff Kim Suh (Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys).
Todd I. Siegel, for plaintiff Charles Moon (Siegel and Siegel, attorneys).
John Blum, for plaintiff Evisoo Suh (Blume, Vasquez, Goldfaden, Berkowitz & Oliveras, attorneys).
James P. McHugh, III, for defendant Evisoo Suh (Leary, Bride, Tinker & Moran, attorneys).
*28 Thomas B. Hanrahan, for defendants Dennis, Palmer & Sales Service (Harwood Lloyd Esqs., attorneys).
ROSEMARY HIGGINS CASS, J.S.C.
These consolidated matters came before me for trial on March 30, 1992. However, all parties consented to a stipulation of facts. The insurance carrier for defendants, Dennis, Palmer and Service Sales, Inc. deposited with the court proceeds of its insurance policy in the sum of $500,000 pursuant to an order of the Honorable Carol A. Ferentz dated January 14, 1992. The parties then requested declaratory judgment on the question of whether the liability coverage under the Aetna Casualty and Surety Company (hereinafter Aetna) policy of insurance is the $500,000 deposited with the court or whether, there being two insureds covered under the same policy, each is entitled to $500,000 coverage.
This action arises from a motor vehicle accident which occurred June 13, 1988 on Route 4 West in Paramus, New Jersey. There were three vehicles involved. Two vehicles were owned by defendant Service Sales, Inc. Herman Dennis, an employee of Service Sales, Inc., was driving a 1988 Mazda SE-5 pickup and Augustus Palmer, also an employee, was driving a 1988 Mazda 626. The third vehicle, a green Mercedes, was driven by Evisoo Suh, plaintiff. Plaintiff Kim Suh was a front seat passenger, and Mrs. Don Moon was in the back seat behind the driver Mr. Suh. Mrs. Moon was killed in the collision and Evisoo Suh and Kim Suh were seriously injured. The facts are stipulated as follows:
All vehicles were traveling West on Route 4. (Accident report of Officer Scully) Vehicle 1; a 1985 Mercedes 300D, New Jersey registration 327-2YH, was operated by Evisoo Suh, who resides at 25 Devon Drive, West Orange, New Jersey. Said vehicle is owned by Kim Suh, who was seated in the right front passenger seat at the time of the accident.
Victim, Mrs. Don Moon, 762 Wynetta Place, Paramus, New Jersey was seated in the rear seat of vehicle 1 directly behind Evisoo Suh, the driver in the Mercedes identified as vehicle 1 in the police report. (Id.)

*29 Vehicle 2; a 1988 Mazda pickup truck, New Jersey registration CTE-80N, was operated by Herman Dennis, 125 Lawrence Street, Hackensack, New Jersey. (Id.)
Vehicle 3; a 1988 Mazda 626, New Jersey registration CMJ-864, was operated by Augustus Palmer. (Id.)
The vehicles operated by Mr. Dennis and Mr. Palmer were owned by Service Sales, Inc., 2500 Hudson Terrace, Fort Lee, New Jersey. (Statement of investigator Joseph Cofone, Bergen County Prosecutor's Office.)
Mr. Palmer drove Mr. Dennis and one Clifton Campbell in the Mazda 626 to Hackensack Ford at 320 River Street in Hackensack to pick up the Mazda SE-5 truck. (Statement of H. Dennis at P3, 4.)
Mr. Palmer and Mr. Dennis were then traveling on Route 4 West enroute to 556 East 20th Street, Paterson, to deliver the Mazda SE-5 operated by Mr. Dennis to a Mr. Williams' home. (Statement of H. Dennis at P3).
Mr. Palmer, in the Mazda 626, was leading with Mr. Dennis following in the SE-5 truck. (Statement of Augustus Palmer at P4).
Mr. Dennis, who was to follow Mr. Palmer, did not know how to get to Mr. Williams' house in Paterson. (Statements of Clifton Campbell at P7; H. Dennis at P4).
From the time the Dennis and Palmer vehicles entered Route 4, they remained in the left or fast lane. (See Report of Investigator Joseph Cofone)).
Mr. Palmer, who was leading, was aware that the left or fast lane is for passing on a three-lane highway under New Jersey law. (Statement of A. Palmer P28).
It was evening. The street lights were on and the road was well lit. (Statement of H. Dennis of 6/17/88 at P2).
Traffic was light to moderate. (Statement of A. Palmer P27).
Road condition was good. (Statement of A. Palmer at P19).
The Mazda 626 and the SE-5 pickup approached the auto of Mr. Lennox Jackson at some point on Route 4. (Statement of L. Jackson at P2. * * * Note; All citations to Statement of L. Jackson will be to statement of July 21 unless indicated otherwise).
The accident occurred in the area of Mile Post 4 on Route 4 West. (Report of Investigator Joseph Cofone, Bergen County Prosecutor's Office).
Mr. Jackson was traveling in the left, or fast, lane. (Id.)
The approaching vehicles were in the same lane as Mr. Lennox Jackson. (Statement of L. Jackson at P3).
Mr. Jackson also observed the green Mercedes, later found to be driven by Mr. Suh, in the middle lane 70-100 yards ahead. (Id. at P2).
Mr. Jackson had his cruise control set at 60 miles per hour while driving in the left lane. (Statement of L. Jackson at P3).
The Palmer vehicle, the Mazda 626, flashed its headlights to signal Mr. Jackson to move over. (Statement of L. Jackson at P3).
The overtaking vehicles appeared to be racing; they were traveling at an excessive rate of speed. (Statement of L. Jackson of 6/15/88 at P1).

*30 Mr. Jackson estimated the speed of the overtaking vehicles at 70 or 80 miles per hour. (Report of Investigator Cofone).
Mr. Jackson does not wear glasses. (Id.).
Jackson moved to the center lane and both vehicles passed him in the left lane. (Statement of L. Jackson at P4).
The Dennis vehicle, the white SE-5 truck, then cut back over to the center lane and began passing the Palmer vehicle on the right. (Statement of L. Jackson at P4).
When the white SE-5 driven by Mr. Dennis got just beyond the Palmer vehicle, the Dennis vehicle attempted to cut back over into the left lane, or fast lane occupied by the Palmer vehicle. (Statement of L. Jackson at P6).
There was only a space of about three feet between the Dennis and Palmer vehicles when the Dennis vehicle, the SE-5 pickup, cut into the center lane to begin to pass the Palmer vehicle. (Statement of L. Jackson at P5).
At this point, the left rear of the SE-5 driven by Mr. Dennis hit the right front of the Palmer vehicle. (Statement of L. Jackson at P6).
The Dennis vehicle spun out and contacted the green Mercedes while the Mercedes was in approximately the area of the right, or slow, lane of Route 4. (Statement of L. Jackson at P8).
The front right bumper of the SE-5 driven by Mr. Dennis hit the Mercedes in the side in the area of the rear door. (Statement of L. Jackson at P8).
The two cars continued together for a brief time. They then separated. (Statement of L. Jackson at P8).
The Mercedes proceeded to hit utility pole # 60816PRS and the white SE-5 driven by Mr. Dennis hit the next utility pole # PS2924PRS. (See report of Patrolman Scully).
Aetna issued a commercial insurance policy to Service Sales Inc. covering 13 vehicles, including the two driven by defendants Dennis and Palmer. The policy was in effect from May 28, 1988 to May 28, 1989. In Section 2 Aetna agreed to provide coverage in the following instance:
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
The policy defines "insured" in the following respect:
D. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought. (Sec. V.D. emphasis supplied).
The policy defines Limit of Insurance as follows:

*31 Regardless of the number of covered "autos", "insureds", premiums paid, claims made, or vehicles involved in the "accident", the most we will pay for all damages resulting in any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
All "bodily injury" and "property damage" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."
The Declarations page of said policy sets forth the liability insurance policy limits as follows:

 Coverages Covered Autos Limit
 (Entry of one or more "The most we will
 of the symbols from pay for any one
 three shows which are accident or loss"
 are covered).
 Liability
 Insurance 7, 8, 9 $500,000 per
 accident

Plaintiff Evisoo Suh instituted suit in Essex County Superior Court on July 12, 1988; plaintiff Kim H. Suh instituted suit on January 25, 1989 in Essex County Superior Court; suit was also instituted in the Bergen County Superior Court on March 14, 1989 on behalf of plaintiffs Charles Moon, Administrator Ad Prosequendum and General Administrator of the Estate of Don Za Moon, deceased, and Charles Moon, individually, Seiyeun Moon, Seijeung Moon and James Peter Moon for the wrongful death of Don Moon on June 13, 1988.
Two issues are implicated:
1. Whether the policy as written is ambiguous as to the amount of coverage afforded when two vehicles insured under the same policy are involved in a collision.
2. Whether the incidents in the present case constitute one or more than one accident.
Plaintiff-movants contend, firstly, that the insurance policy is ambiguous. Movants contend that in the definition of "insured", the policy indicates that there is separate coverage for each insured against whom a claim is made. Therefore the intent of this section is to give $500,000 of coverage to each defendant, Dennis and Palmer. Since, on the other hand, *32 defendant-movant's carrier, Aetna, contends the provisions of the Declarations page as to "Limit" require that, while there is separate coverage, the total which would be paid on any one accident or loss is $500,000, the plaintiffs reason the "Limit of Insurance" clause frustrates the intent of the provision affording separate coverage to each individual defendant.
Plaintiffs point out that it is a basic rule in the construction of an insurance policy that ambiguities in the writing must be strictly construed against the insurer, citing Sparks v. St. Paul Insurance Company, 100 N.J. 325, 495 A.2d 406 (1985) and where the controlling language of an insurance policy is susceptible of two interpretations, one favorable to the insured and the other to the insurer, the interpretation sustaining coverage should be applied and any ambiguity resolved in favor of the insured. Great American Insurance Co. v. Lerman Motors Inc., 200 N.J. Super. 319, 491 A.2d 729 (App.Div. 1984). Movants then conclude that, since there is an ambiguity, it must be construed against the insurer and they argue coverage of Palmer and Dennis should be $500,000 each.
Aetna, however, cites Stiefel v. Bayly, Martin and Fay, 242 N.J. Super. 643, 577 A.2d 1303 (App.Div. 1990) which states that the clear language of an insurance policy cannot be altered to change the plain and ordinary meaning of the policy. The court said:
The strained interpretation advocated by plaintiff and the other defendants, and adopted by the trial judge, has emasculated a condition provided in the policy for the protection of PEIC into a form of insuring agreement. Liberal rules of construction of insurance policies do not sanction such emasculation of the clear language of the policy. Unambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured. Sparks v. St. Paul Insurance Co., 100 N.J. 325, 337, 495 A.2d 406 (1985). The court should read policy provisions so as to avoid ambiguities, if the plain language of the contract permits. The court should not torture the language of the policy to create ambiguity. First State Underwriters v. Travelers Ins. Co., 803 F.2d 1308 (3rd Cir.1986) (quoting from Eastern Associated Coal Corp. v. Aetna Casualty and Surety Co., 632 F.2d 1068, 1075 (3rd Cir.1980). Id. at 651, 577 A.2d 1303. (emphasis added).
*33 Plaintiff Charles Moon further contends that the stipulated facts set forth two separate accidents and thus, pursuant to the language regarding Limit of "$500,000 per accident" there would be two separate coverages of $500,000 for each accident. The first accident occurred, according to Moon, when the left rear of the Dennis vehicle hit the right front portion of the Palmer vehicle. The second accident, he maintains, occurred when the right front bumper of the Dennis vehicle struck the plaintiff's vehicle.
Plaintiff Moon relies on Liberty Mutual Ins. Co. v. Rawls, 404 F.2d 880 (5 Cir.1968) (Rehearing denied May 19, 1969) and Loerzel v. Cartright, et al., 279 A.D. 825, 109 N.Y.S.2d 400 (3rd Dept. 1952).
In Liberty Mutual Ins. Co. v. Rawls, supra, an insured collided with the left rear of one automobile, knocked it off the highway and then the insured continued, crossed the center line and collided head-on with another vehicle. The court held that there were two separate accidents.
In Loerzel v. American Fidelity Fire Ins. Co., 281 A.D. 735, 118 N.Y.S.2d 180 (3rd Dept. 1952), the trial court ruled that each truck was separately covered by the policy limit and therefore the policy limit in the case was doubled. The appellate court affirmed this ruling saying that "the record in this case clearly reveals that the jury found two trucks of the trucking company were involved in the accident, and both drivers were guilty of negligence in the operation thereof." Id., 118 N.Y.S.2d at 181.
As to whether for insurance coverage purposes, the actions of Dennis and Palmer were one and only one accident, Aetna relies on Doria v. Insurance Company of North America, 210 N.J. Super. 67, 509 A.2d 220 (App.Div. 1986). In that case, one plaintiff fell into a swimming pool while trying to rescue another. The court held that, when injuries to two or more persons resulting from the same cause are so closely linked in time and space as to be deemed by an average person as a single event, there is but one occurrence.
*34 With respect to the present case, no New Jersey case has dealt with the precise issues raised here. But a West Virginia case is instructive and analogous to the present situation. In Shamblin v. Nationwide Mutual Insurance Co., 175 W. Va. 337, 332 S.E.2d 639 (Sup.Ct. of App. 1985), three of Shamblin's employees were driving three of his vehicles in the course of their employment. While one was trying to pass another, two of them collided and then one collided with another vehicle. The relevant portion of the policy reads as follows:
3. After setting forth in a schedule the dollar amounts mentioned in the text as the limits of liability for "each person" and "each occurrence" for the respective coverages, Section I provides:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of
Coverage C. bodily injury or
Coverage D. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use ... of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage ... but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
In Section III are the following "Limits of Liability": Regardless of the number of ... (4) automobiles to which this policy applies, the company's liability is limited as follows (emphasis added):
Coverage C  The Limit of bodily injury liability stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages ... because of bodily injury sustained by one person as a result of any one occurrence; but subject to the above provision respecting "each person," the total liability of the company for all damages ... because of bodily injury sustained by two or more persons as a result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to "each occurrence."
Coverage D  The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule as applicable to "each occurrence".
Coverages C and D  For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence. Shamblin, supra, 332 S.E.2d at 641 n. 3.
*35 The Shamblin Court found that the insurance policy was not ambiguous. It held that:
When the provisions of an insurance policy are plain and unambiguous and such provisions are not contrary to a statute, regulation or public policy, said provisions will be applied and not construed judicially. Id., 332 S.E.2d at 642.
The Shamblin Court also discussed the Limit of Liability Clause contained in the Nationwide policy, holding that:

Stacking under automobile policies is to be denied when there is express anti-stacking language in the limitation of liability clause. Id., 332 S.E.2d at 645, 646.
In the matter at bar, the insurance policy issued to Service Sales, Inc. contains express anti-stacking language in its Limit of Insurance clause and, therefore, stacking should not be permitted, since the provision in question clearly precludes it and must be enforced. See, e.g. Sparks v. St. Paul Insurance Co., 100 N.J. 325, 336, 495 A.2d 406 (1985); Linden Motor Freight Co., Inc. v. Travelers Insurance Company, 40 N.J. 511, 525, 193 A.2d 217 (1963); and Last v. West American Insurance Company, 139 N.J.Super 456, 354 A.2d 364 (App. Div. 1976). A policy will not be judicially rewritten to provide a new or better contract for the insured. Linden Motor Freight Co., Inc., 40 N.J. at 525, 193 A.2d 217; and Kelly, etc. v. Atlantic Mutual Insurance Co., 218 N.J. Super. 395, 409-410, 527 A.2d 946 (App.Div. 1987) quoting Middle Department Inspection Agency v. Home Insurance Co., 154 N.J. Super. 49, 54, 380 A.2d 1165 (App.Div. 1977), certif. den. 76 N.J. 234, 386 A.2d 858 (1978).
In the instant case, the insurance policy must be read in its entirety. An insured to whom coverage is provided is insured separately except "with respect to the Limit of Insurance". The Limit of Insurance clearly states "... the most we will pay for all damages resulting in any one `accident' is the Limit of Insurance for Liability Coverage shown in the Declarations." It is therefore the clear intent of the policy to pay no more than $500,000 for any one occurrence, regardless of the *36 number of vehicles involved in the accident. The policy is not ambiguous. As in Shamblin
"... there is no "fleet" policy making each vehicle covered by a separate policy. To the contrary, the policy herein expressly provides that the limitations of liability apply regardless of the number of automobiles covered by the policy." Shamblin, 332 S.E.2d at 645.
Shamblin, supra, also addresses the issue as to when there is a single accident and when there is more than one. Shamblin refers to Hartford Accident & Indemnity Co. v. Wesolowski, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973), which case discussed three different approaches to determining the number of occurrences:
(1) looking to the proximate cause of the injuries or damages, (2) looking to the number of persons suffering loss, and (3) looking to that one event of an unfortunate character that takes place without one's foresight or expectation and which is objectively descriptive of what happened. The court concluded that the third approach was the most practical of the three approaches. Id., 332 S.E.2d at 644.
The Shamblin court reasoned with respect to that case that:
... there may or may not have been two antecedent negligent acts but there was only one resulting "occurrence", the event from which liability arises, namely, the collision. The subject matter of the insurance is not "cause[s]" but "liability" and the basis for liability is an event (the collision) resulting in bodily injury or property damage. "[A]n occurrence means one event, not several events, and the question here is which event is the occurrence contemplated by the policy definition. The cases have consistently construed `occurrence' or `accident' in liability policies to mean the event for which the insured becomes liable, and not some antecedent cause of the injury." Shamblin, 332 S.E.2d at 644, citing Champion International Corp. v. Continental Casualty Co., 546 F.2d 502, 508 (2nd Cir.1976).
In the case at bar, the two defendants' vehicles collided with each other, one of which then hit plaintiff's car. Here, the collision of defendants' cars was merely an antecedent cause and not an occurrence within the terms of the policy. The single occurrence was one of the defendant's cars hitting the Suh vehicle.
In addition, movant's reliance on Liberty Mutual, supra is misplaced. There the one defendant hit two separate cars, and there were clearly two separate collisions between the one defendant and two other autos.
*37 Loerzel v. American Fidelity Fire Insurance, supra also does not apply. As Shamblin states of it:
The appellate court noted: "The record in this case clearly reveals that the jury found two trucks of the trucking company were involved in the accident, and both drivers were guilty of negligence in the operation thereof." 281 A.D. at 735, 118 N.Y.S.2d at 181. The court also emphasized that the "policy in question was a fleet policy, and ... was intended to cover each vehicle the same as though a separate policy had been issued therefore." Id. Finally, the court held that an ambiguity existed between the clause covering each vehicle and the clause limiting liability, and resolved the ambiguity against the insurer. Id. in Shamblin, 332 S.E.2d at 645.
Because this court find that the policy issued by Aetna was not ambiguous and clearly stated on the Declaration page that their maximum liability was $500,000 for any one accident or loss, and because within the meaning of insurance policies, there was only one occurrence, declaratory judgment is hereby entered declaring that the limits of liability for the accident of June 13, 1988 is the total sum of $500,000, covering the two insureds together.
Defendant counsel Harwood Lloyd shall submit an appropriate order under the five day rule.