756 So.2d 29 (2000)
AUTO-OWNERS INSURANCE COMPANY, Petitioner,
v.
Karen ANDERSON, Respondent.
No. SC95337.
Supreme Court of Florida.
March 23, 2000.
Rehearing Denied May 9, 2000.
*30 Charles P. Schropp and Amy S. Farrior of Schropp, Buell & Elligett, P.A., Tampa, Florida, for Appellant.
*31 Thomas J. Farkash of Fine, Farkash & Parlapiano, P.A., Gainesville, Florida, for Appellee.
PARIENTE, J.
We have for review a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit in Anderson v. Auto-Owners Insurance Co., 172 F.3d 767, 770 (11th Cir.1999), which is determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. We rephrase the compound certified question[1] as two separate questions:
I. BASED ON THE APPLICABLE INSURANCE POLICY LANGUAGE, SHOULD THE TRACTOR AND TRAILER EACH BE TREATED AS A SINGLE COVERED AUTOMOBILE?
II. IF THE TRACTOR AND TRAILER SHOULD EACH BE TREATED AS A SINGLE COVERED AUTOMOBILE, DOES THE APPLICABLE POLICY LANGUAGE UNAMBIGUOUSLY LIMIT COVERAGE TO A TOTAL OF $750,000, EVEN WHEN MULTIPLE INSURED VEHICLES ARE INVOLVED IN A SINGLE ACCIDENT?
See Anderson, 172 F.3d at 770. We answer the first rephrased certified question in the affirmative and the second rephrased certified question in the negative.

FACTUAL BACKGROUND AND PERTINENT POLICY PROVISIONS
The pertinent facts of the automobile accident that gave rise to the present case are set forth in the Eleventh Circuit's opinion:
On December 7, 1996, appellant Karen Anderson was a passenger in a Mazda Miata convertible automobile traveling southbound in the left lane of Interstate 75. A tractor-trailer rig, comprised of a 1987 [W]hite tractor and a 1986 Great Dane commercial trailer, was also traveling southbound in the left lane. The Miata pulled into the right lane in order to pass the tractor-trailer rig, but while passing, the rig moved into the right lane. To avoid a collision, the Miata swerved off the highway and overturned. Anderson sustained severe injuries.
Craig Bishop owned both the tractor and trailer, and insured both through Auto-Owner's Insurance Company (Auto-Owner's), under the same policy.
Id. at 768.
The policy under which Bishop insured the tractor and trailer defines automobile as "a four-wheel private passenger automobile, a truck or truck tractor or a commercial trailer unless another type of vehicle is described in the Declarations." The policy also provides the following liability coverage:
The attached Declarations describes the automobile we insure and shows the coverages for which you have paid a premium. We agree with you as follows with respect to each coverage for which a premium has been paid:
LIABILITY COVERAGE for Bodily Injury and Property Damage: We will pay damages for bodily injury and damage to tangible property for which you become legally responsible and which involve your automobile.
Additionally, the policy contains a clause which is found in a "Combined Limit of *32 Liability Endorsement" (hereinafter referred to as the "limitation of liability clause"), and reads as follows:
When the coverage shown in the Declarations is "Combined Liability", we further agree that the Limit of Liability Coverage is replaced by the following:
The limit of liability stated in the Declarations is the most we will pay for all damages, including damages for expenses, care and loss of services and loss of use as a result of any one occurrence. Charging premiums under this policy for more than one automobile does not increase the limit of our liability as stated for each occurrence.
The Declarations, which are referenced in these provisions, separately list liability coverage for the "86 Great Dane Trailer" and the "87 White Tractor," the tractor and trailer involved in this accident. The Declarations separately list liability coverages for six other vehicles covered by the policy. The entry for each vehicle lists the "Combined Liability" coverage as "$750,000 EA OCC," which is an abbreviated way to indicate "$750,000 each occurrence."[2] Notably, a separate premium is listed not only for each separately listed vehicle but for each separately listed coverage included for each insured vehicle.

PROCEDURAL BACKGROUND
Pursuant to its contractual duty to defend Bishop, Auto-Owners entered into settlement negotiations with Anderson, but these negotiations reached an impasse when the parties disagreed as to the interpretation of portions of the insurance policy language. See Anderson, 172 F.3d at 768. Anderson thereafter filed suit,[3] seeking a declaratory judgment that would award her the policy limit of both insured vehicles. See id.
The federal district court reviewed the policy language and concluded that the issue before it presented a question of first impression in Florida. See id. at 768. In particular:
The district court granted Anderson's motion for summary judgment, determining that although the rig was responsible for causing one accident, the rig was essentially two "automobiles," the tractor and the trailer. Thus, the policy limit of $750,000 was available to Anderson for each of the insured automobiles. The district court found that it was reasonable to interpret the above-cited policy language to mean that when two separate vehicles are involved in one single accident, two occurrences exist. The district court further found that if Auto-Owners intended to treat the two separately covered vehicles as a single-covered vehicle when operated in tandem, it could have drafted the policy to achieve that result. Therefore, the district court awarded Anderson $1,500,000 for her injuries.
Id. at 768-69.
On appeal to the Eleventh Circuit, Auto-Owners argued that the district court erred by interpreting the insurance policy provisions as ambiguous, and it relied on a *33 number of non-binding state court opinions that hold where two or more related automobiles, insured through the same company, are involved in a single accident the insured party is not entitled to recover the policy limit of each automobile involved, but can only recover the policy limit of one automobile, or the policy limit of one accident.
Id. at 769. Anderson countered that the insurance policy did not contain the "very specific limiting provisions" contained in each of the out-of-state cases on which Auto-Owners relied. See Anderson, 172 F.3d at 770. Because the Eleventh Circuit deemed the issue presented by this case to be "an unsettled question of Florida law," it certified the question to this Court. See id.

BASED ON THE POLICY LANGUAGE, SHOULD THE TRACTOR AND TRAILER EACH BE TREATED AS A SINGLE COVERED AUTOMOBILE?
The first rephrased certified question requires us to determine whether the policy treats the two separately covered vehicles as a single covered automobile when the two vehicles operate in tandem. As to this question, we find that the policy language is clear and unambiguous and thus must be construed in accordance with "the plain language of the polic[y] as bargained for by the parties." Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). As noted above, the Auto-Owners' policy provides that an automobile is "a four-wheel private passenger automobile, a truck or truck tractor or a commercial trailer, unless another type of vehicle is described in the Declarations." Under this policy definition, the tractor and the trailer are each individually considered an "automobile." Further, separate premiums were charged and paid for the tractor and the trailer, each vehicle is listed separately in the declarations, and each vehicle has a separate limit of liability of "$750,000 EA OCC" as set forth in the declarations.
Although the tractor and the trailer each clearly meet the policy's definition of "automobile" when they operate individually, the two vehicles were connected to one another and operating as a tractor-trailer rig at the time of the accident. The plain language of the policy, however, contains no indication whatsoever that a tractor-trailer rig should be treated as a single automobile. Clearly, if Auto-Owners had intended to treat the two separately covered vehicles as a single covered automobile when operated in tandem, it could have drafted the policy to achieve that result. By failing to do so, Auto-Owners cannot now take the position that the tractor-trailer rig should be treated as one automobile. See State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998) (explaining that when an insurer fails to define a policy term, the insurer cannot then take the position that coverage should be construed narrowly). As the federal district court found, "Had the Defendant wanted [to] treat two separately covered vehicles, used in tandem to cause a single harm, as a single covered vehicle, it could have drafted a policy provision clearly commanding that result." Anderson v. Auto-Owners Ins. Co., No. 96-247-Civ-OC-10A (M.D.Fla. Sept. 30, 1997); see also Anderson, 172 F.3d at 768-69. Accordingly, we find that the tractor and trailer should each be treated as a single covered automobile, and therefore we answer the first rephrased certified question in the affirmative.

WHETHER THE APPLICABLE POLICY LANGUAGE UNAMBIGUOUSLY LIMITS COVERAGE TO A TOTAL OF $750,000 EVEN WHEN MULTIPLE COVERED VEHICLES ARE INVOLVED IN A SINGLE ACCIDENT
Based upon our conclusion that the tractor and trailer should each be considered as a covered automobile, we must next consider the second rephrased certified question. In answering this question, *34 we are guided by several basic principles of insurance contract interpretation. As acknowledged by both the federal district court and the Eleventh Circuit, Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. See Swindal, 622 So.2d at 470. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous. See Weldon v. All Am. Life Ins. Co., 605 So.2d 911, 914-15 (Fla. 2d DCA 1992); see also Container Corp. of Am. v. Maryland Cas. Co., 707 So.2d 733, 736 (Fla.1998) (where policy language is susceptible to differing interpretations, it should be construed in favor of the insured). Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy. See CTC Dev. Corp., 720 So.2d at 1076; Swindal, 622 So.2d at 470. Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured. See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998). In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses. See State Comprehensive Health Ass'n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997).
Auto-Owners relies on the limitation of liability clause in the policy to argue that no matter how many of its separately insured vehicles are involved in a single accident, Auto-Owners' liability is capped at $750,000:
The limit of liability stated in the Declarations is the most we will pay for all damages, including damages for expenses, care and loss of services and loss of use as a result of any one occurrence. Charging premiums under this policy for more than one automobile does not increase the limit of our liability as stated for each occurrence.
However, in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. See Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 941 (Fla.1979) (noting that every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible); see also Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir.1993). In this case, therefore, we must not focus solely on the limitation of liability clause; instead, we must read that clause in conjunction with the entire policy, including the liability coverage provision and the policy declarations.
Under the liability coverage provision, Auto-Owners agreed to pay damages for bodily injury and damage to tangible property for which the insured became legally responsible and which "involve[d]" the insured's automobile. As stated above, the tractor and trailer in this case are each considered separate automobiles under the policy language. Because they were both involved in this accident resulting in bodily injury, pursuant to this coverage provision, Auto-Owners agreed to pay damages arising from the operation of both the tractor and the trailer for which the insured became legally responsible.
This coverage provision also explains that the attached declarations describe the insured automobiles and show the coverages for which premiums have been paid. The declarations list the "liability coverage" as $750,000 for each occurrence for each vehicle and this amount is separately listed for each insured vehicle. Thus, reading these provisions together, Auto-Owners provided liability coverage of $750,000 when an insured vehicle was involved in an occurrence.
If Auto-Owners intended to then exclude or limit this liability coverage no matter how many of its insured vehicles were involved in an accident, it was incumbent upon Auto-Owners to do so unambiguously. Auto-Owners states in the *35 introduction to its policy that the policy represents "a sincere effort to reduce to clear, understandable language the broad coverage of our insurance contractin the hope you will find it inviting to read and easy to comprehend." Nonetheless, we do not find that the scope of the limitation of liability clause is clear and easy to comprehend, especially when read in conjunction with the declarations and the liability coverage clause.
Auto-Owners' failure to craft specific language limiting coverage for the tractor and trailer to a total of $750,000 is even less understandable in light of the fact that the Auto-Owners' commercial policy insured tractors and trailers. Indeed, Auto-Owners could have reasonably anticipated that the times when the insured trailer would be most likely to be involved in an accident and the time that liability coverage would be most needed would be when it was operating in tandem with the insured tractor. However, under the construction of the policy urged by Auto-Owners, the amount of liability coverage for the tractor operating alone would be the same as it would be for the tractor and trailer operating in tandem, even though the insured paid separate premiums for both the tractor and trailer, and even though both vehicles were involved in the accident.[4]
We emphasize that it is not the failure to define "occurrence" that renders the limitation of liability clause ambiguous. See Deni, 711 So.2d at 1139 (lack of definition of operative term in a policy does not necessarily render the term ambiguous). Rather, the ambiguity arises from the question of whether the limitation of liability clause, when read in conjunction with the entire policy, limits Auto-Owners' liability to $750,000 for the accident no matter how many separately insured vehicles were involved.
Indeed, a reasonable interpretation of the Auto-Owners' limitation of liability clause is that it serves as an anti-stacking clause that prevents the stacking of liability coverages for insured vehicles not involved in the accident. Stacking of coverages occurs when coverage from vehicles not involved in the accident is sought to be added to the coverage for the vehicle involved in the accident. See, e.g., Greer v. Associated Indem. Corp., 371 F.2d 29, 30-31 (5th Cir.1967).
Although Auto-Owners agrees that the limitation of liability clause functions as an anti-stacking clause, it also contends that this provision is multi-functional, and thus additionally limits the maximum available coverage to $750,000 no matter how many of its insured vehicles are involved in a single accident. However, because the limitation of liability clause is susceptible to differing interpretations, that clause is ambiguous. Therefore, we are obligated *36 to construe the ambiguity against the drafter and in favor of the insured.
The lack of clarity as to the meaning of the Auto-Owners' limitation of liability clause is even more apparent when compared with recent out-of-state cases that Auto-Owners actually cites in support of its position. In contrast to the clause drafted by Auto-Owners in this case, the limiting provisions of the insurance policies set forth in the recent reported decisions include an introductory qualifying clause that clearly and unambiguously explains that liability coverage is limited to a certain amount "regardless" of the number of vehicles involved in the accident. See State Auto Ins. Co. v. Stinson, 142 F.3d 436 (6th Cir.1998) (unpublished table decision) ("Regardless of the number of covered `autos,' `insureds,' premiums paid, claims made or vehicles involved in the `accident', the most we will pay for the total of all damages...."); Weimer v. Country Mutual Ins. Co., 216 Wis.2d 705, 575 N.W.2d 466, 469 n. 6 (1998) ("Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows...."); Suh v. Dennis, 260 N.J.Super. 26, 614 A.2d 1367, 1370 (Law Div. 1992) ("Regardless of the number of covered `autos', `insureds', premiums paid, claims made, or vehicles involved in the `accident', the most we will pay for all damages....").[5]
The presence of these qualifying clauses evidences an established custom in the insurance industry as to the language used by insurers in drafting clauses where the intent is to limit liability coverage to a single amount, even though multiple insured vehicles are involved in an accident. See, e.g., National Merchandise Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 530 (Fla. 1st DCA 1981) (when a court interprets insurance policy language, the court may consider established custom and usage in the insurance industry). As these out-of-state cases demonstrate, when multiple insured vehicles are involved in a single accident, a limitation of liability can be achieved by the simple use of a qualifying clause. In contrast, the language in the Auto-Owners' policy does not contain a qualifying clause, nor does it otherwise clearly and unambiguously limit such liability. A comparison of the language in this policy with the language included in the policies of the out-of-state cases cited by Auto-Owners supports the conclusion that if Auto-Owners had intended to prevent stacking of coverages when more than one covered vehicle was involved in an accident, it could have indicated its intentions clearly and unambiguously by using the qualifying clause "regardless of the number of insured vehicles involved in the accident."
Accordingly, we interpret the Auto-Owners' policy provisions in favor of providing separate liability coverages for each insured vehicle that was involved in the accident. Because both the tractor and the trailer had separate liability coverages of $750,000 per occurrence, the total available liability coverage for the accident that involved both vehicles is $1,500,000. We therefore answer the first rephrased certified question in the affirmative and the second rephrased certified question in the negative, and we return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
ANSTEAD, LEWIS and QUINCE, JJ., concur.
*37 SHAW, J., dissents with an opinion, in which HARDING, C.J., and WELLS, J., concur.
SHAW, J., dissenting.
The majority opinion holds that under the present Auto-Owners insurance policy the liability coverage for both the tractor and trailer portions of Bishop's rig may be aggregated or "stacked" and that Auto-Owners thus must pay double (i.e., $1.5 million) in coverage for the present accident. I disagree.

I. THE INSURANCE POLICY
The terms of the insurance agreement between Auto-Owners and Bishop are set forth in the "Automobile Policy" issued by Auto-Owners.[6] In determining the scope of coverage under this contract, the intent of the parties is the polestar that guides a court's inquiry.[7] The terms of the policy are straightforward. Auto-Owners assumed liability for bodily injury and property damage "involving" an insured automobile:
LIABILITY COVERAGE. Bodily Injury and Property Damage. We will pay damages for bodily injury and damage to tangible property for which you become legally responsible and which involve your automobile.
(Emphasis added.) "Automobile" was defined to include both a "tractor" and a "trailer" in the disjunctive:
AUTOMOBILEthis word means a four-wheel private passenger automobile, a truck or truck tractor or a commercial trailer, unless another type of vehicle is described in the Declarations.
In that case, "automobile" also means the particular vehicle described.
(Emphasis added.)
And finally, the policy contained an express anti-stacking clause, entitled "Combined Limit of Liability Endorsement," which superseded the standard "Limit of Liability" provision and imposed a strict limit on Auto-Owners' total liability for each "occurrence," regardless of the number of vehicles covered:
COMBINED LIMIT OF LIABILITY ENDORSEMENT
(Bodily Injury and Property Damage)
When the coverage shown in the Declarations is "Combined Liability," we further agree that the Limit of Liability provision of Liability Coverage is replaced by the following:

The limit of liability stated in the Declarations is the most we will pay for all damages, including damages for expenses, care and loss of services and loss of use as the result of any one occurrence. Charging premiums under this policy for more than one automobile does not increase the limit of our liability as stated for each occurrence.

(Emphasis added.) The "Declarations" section stated that the "combined liability" limit for each occurrence was $750,000; this limit was reiterated in the description of each vehicle covered under the policy-including the White tractor and the Great Dane trailer.[8]

II. THE ANTI-STACKING CLAUSE
Under the present majority opinion, the above referenced anti-stacking clause is given the following effect: (1) If a single *38 covered vehicle is involved in an accident, the liability coverage of the other insured vehicles cannot be stacked on top of the coverage of the accident-vehicle (i.e., the total coverage for the accident is $750,000); and (2) if two or more covered vehicles are involved in a single accident, the liability coverage of the other non-accident vehicles still cannot be stacked on top of the accident-vehicles' coverage, but the liability coverage of each accident-vehicle can be stacked on top of the coverage of every other accident-vehicle (i.e., the total coverage for the accident would be $1.5 million or greater, depending on the number of covered vehicles involved in the accident). Thus, in the present accident, the liability coverage of the six non-accident vehicles cannot be stacked on the coverage of either the White tractor or Great Dane trailer, but the coverage of both the tractor and trailer can be stacked to yield a combined coverage of $1.5 million.
Nothing in the plain language of the Auto-Owners policy suggests such a complex scheme. Rather, giving the above policy language its plain meaning, the policy simply says: No stacking. Period. Thus, in my reading of the policy, the following liability limits were applicable for each accident involving a tractor/trailer rig: The tractor standing alone was insured for $750,000; the trailer standing alone was insured for $750,000; and when traveling in tandem as a rig, the tractor/trailer rig was insured for $750,000. In other words, if either the tractor or trailer by itself were involved in an accident, Auto-Owners would be liable for $750,000; and if the full rig were involved in an accident, Auto-Owners still would be liable for only $750,000.
This interpretation of the Auto-Owners policy is confirmed by an additional fact. The annual liability premiums for each of the tractors differed vastly from the annual premiums for each of the trailers.[9] For instance, while the premium for the White tractor was $1,421.09 per year, the premium for the Great Dane trailer was only $149.31 per year. It is highly unlikely that the parties would have intended that the payment of a mere $149.31 per year would double Auto-Owners' liability (i.e., would increase its liability to $1.5 million) in every accident involving the rig. This is particularly true in light of the fact that the tractor, in all probability, was at greatest risk of being involved in an accident when hauling the trailer.[10]
The vast weight of legal authority throughout the nation supports this reading of the Auto-Owners policy. Courts consistently have construed comparable anti-stacking clauses to deny multiple coverage in cases where two covered vehicles were involved in a single accident with a third vehicle[11]-even where the covered vehicles were not traveling in tandem.[12] The present majority opinion dismisses several of these cases by pointing out that the anti-stacking clause in the present case *39 was less detailed than the clauses in those cases.[13] This distinction is not dispositive. Although the clause in the present case was less wordy and "lawyeresque" than the clauses in those cases, the present clause adequately expressed the intent of the parties in plain, simple terms. Further, the clauses in the remaining out-of-state cases were as simple and direct as the clause in the present case.[14]

III. CONCLUSION
The majority opinion transforms a simple, straightforward policy of automobile insurance into an arcane legal document that few insurers would have agreed to sign. The present anti-stacking clause could not have been plainer or simpler: "The limit of liability stated in the Declarations is the most we will pay for all damages ... as the result of any one occurrence. Charging premiums under this policy for more than one automobile does not increase the limit of our liability as stated for each occurrence." The limit of liability stated in the Declarations is indisputably $750,000; this limit is stated not once, but eight times in the Declarations section. In contrast, the figure cited by the majority opinion, i.e., $1,500,000, is not stated anywhere in the Declarations sectionor anywhere else in the policy.
Based on the foregoing, I would not parse and rephrase the certified question as the majority opinion does, but instead would respond to the question directly: Auto-Owners' total liability was $750,000 for each occurrence, and this limit applied regardless of the number of vehicles insured under the policy. Thus, the total liability coverage for the White/Great Dane rig in the present accident was $750,000.
HARDING, C.J., and WELLS, J., concur.
NOTES
[1] The Eleventh Circuit certified the following question:

Whether the tractor-trailer rig should be treated as a single covered automobile, under the policy language forming the basis of the present dispute, or whether the single accident resulting in Anderson's injuries constituted two occurrences within the meaning of the policy.
Anderson v. Auto-Owners Ins. Co., 172 F.3d 767, 770 (11th Cir.1999).
[2] Coverage that provides limits "per occurrence" is different from coverage that provides limits "per person/per accident." When coverage is "per person/per accident," the insurer is liable to each person injured up to the stated per person limitations, but within an overall limit per accident. See 12 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 170:7 (3d ed.1997). In contrast, the Auto-Owners' policy is a "per occurrence" policy, and therefore provides a single combined limit of coverage regardless of the number of persons involved in the accident, without a specific limit per person. See id.; see also id. § 171:15 (explaining that for uninsured motorist insurance, just as with automobile liability insurance, a "per occurrence" limit is the "insurer's maximum liability for any one accident regardless of the total number of persons who are injured").
[3] Anderson filed suit in the Circuit Court of the Fifth Judicial Circuit of Florida, and Auto-Owners removed the action to federal district court. See Anderson, 172 F.3d at 768.
[4] To support its conclusion that Auto-Owners' policy did not provide for separate coverage for each vehicle when both were involved in an accident, the dissent relies on the fact that Auto-Owners charged a different liability premium amount for each vehicle The dissent claims that the disparity in premiums reflects the fact that the risk attributable to the tractor standing alone is far greater than the risk attributable to a trailer standing alone. Indeed, the risk arising from the trailer standing alone is virtually non-existent; however, the fact that the risks are different for the tractor and trailer does not establish whether the liability coverage for each vehicle involved in an accident is available to the insured for the benefit of the injured person. Certainly, if the tractor and trailer were insured under different policies, both coverages would be available.

In addition, the fact that the premium amounts for the same liability coverage of $750,000 are different for each vehicle insured under the Auto-Owners' policy does not establish that the separate liability coverages for each vehicle involved in a single accident are not available to the insured. Instead, it simply establishes a variance in the actuarial basis for the premium, based on a variety of factors that are not established by the record. Thus, the fact that the premium amount for the tractor is different from the premium amount for the trailer is not relevant to the question of whether there is separate liability coverage for each separately insured vehicle involved in an accident.
[5] Even the policies in the two reported decisions from the 1980s contain a qualifying clause, albeit less explicit than the more recent policy language. See Inman v. Hartford Ins. Group, 132 Mich.App. 29, 346 N.W.2d 885, 886-87 (1984) ("Regardless of the number of ... (4) automobiles to which this policy applies, the company's liability is limited as follows...."); Shamblin v. Nationwide Mut. Ins. Co., 175 W.Va. 337, 332 S.E.2d 639, 641 n. 3 (1985) ("Regardless of the number of ... (4) automobiles to which this policy applies, the company's liability is limited as follows....").
[6] Bishop is not a party to the present action. Auto-Owners settled the claim against Bishop by paying Anderson $750,000 in uncontested policy proceeds, and Auto-Owners further agreed to litigate Anderson's claim to an additional $750,000 in a separate action. Anderson then filed the present declaratory judgment action directly against Auto-Owners seeking the additional $750,000.
[7] See, e.g., Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla.1975) ("This Court has consistently adhered to the principle that contracts of insurance should be construed so as to give effect to the intent of the parties....").
[8] The policy covered eight vehicles: two tractors, four trailers, and two small trucks. The policy limit of $750,000 per occurrence was denoted in the description of each vehicle.
[9] This disparity in payment reflects the fact that the risk attributable to a tractor standing alone is far greater than the risk attributable to a trailer standing alone.
[10] See Majority op. at 35 ("Indeed, Auto-Owners could have reasonably anticipated that the times when the insured trailer would be most likely to be involved in an accident would be during the times that it was operating in tandem with the insured tractor.").
[11] See, e.g., State Auto Ins. Co. v. Stinson, 142 F.3d 436 (6th Cir.1998) (holding stacking impermissibleeven though separate premiums had been paidwhere two company-owned vehicles, one towing the other, were involved in an accident with a third vehicle); Weimer v. Country Mut. Ins. Co., 216 Wis.2d 705, 575 N.W.2d 466 (1998) (holding stacking impermissibleeven though separate premiums had been paid-where a company-owned dump truck and trailer were involved in an accident with a third vehicle).
[12] See, e.g., Inman v. Hartford Ins. Group, 132 Mich.App. 29, 346 N.W.2d 885 (1984) (holding stacking impermissibleeven though separate premiums had been paidwhere two family-owned vehicles were racing illegally and were involved in an accident with a third vehicle); Suh v. Dennis, 260 N.J.Super. 26, 614 A.2d 1367 (Law Div.1992) (holding stacking impermissibleeven though separate premiums had been paidwhere two company-owned autos were traveling together and were involved in an accident with a third vehicle); Shamblin v. Nationwide Mut. Ins. Co., 175 W.Va. 337, 332 S.E.2d 639 (1985) (holding stacking impermissibleeven though separate premiums had been paid-where two company-owned vehicles were traveling in convoy and were involved in an accident with a third vehicle). Cf. Greer v. Associated Indemnity Corp., 371 F.2d 29 (5th Cir.1967) (holding stacking impermissible where only one insured vehicle was actually "involved" in the accident; but also holding that if two insured vehicles had been involved, stacking would have been permissible under an express separability clause authorizing stacking); Loerzel v. American Fidelity Fire Ins. Co., 281 A.D. 735, 118 N.Y.S.2d 180 (1952) (holding stacking permissible where two company-owned trucks were involved in the same accident but where an express separability clause authorized stacking, as explained in Inman).
[13] The majority opinion cites language in the anti-stacking clauses in Stinson, 142 F.3d 436 ("Regardless of the number of covered `autos,' `insureds,' premiums paid, claims made or vehicles involved in the `accident,' the most we will pay for the total of all damages...."); Weimer, 575 N.W.2d at 469 n. 6 ("Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident. our limit of liability is as follows...."); Suh, 614 A.2d at 1370 ("Regardless of the number of covered `autos,' `insureds,' premiums paid, claims made, or vehicles involved in the `accident,' the most we will pay for all damages...."). See Majority op. at 36.
[14] See Inman, 346 N.W.2d at 886 ("Regardless of the number of ... automobiles to which this policy applies, the company's liability is limited as follows...."); Shamblin, 332 S.E.2d at 641 n. 3 ("Regardless of the number of ... automobiles to which this policy applies, the company's liability is limited as follows....").