ALTENBERND, Judge.
 

 North Pointe Casualty Insurance Company appeals a declaratory judgment determining that its liability insurance policy issued to M & S Tractor Services, Inc., provides coverage for an accident in which the young son of Glenn and Aimee Hines was severely injured. Mr. Hines is the president of M & S Tractor Services and was operating a farm tractor in the course and scope of his employment with the corporation when his son sustained these injuries by falling off the tractor. Although North Pointe undoubtedly intended to exclude coverage for this claim, we conclude that the trial court correctly determined that the liability policy’s exclusion for injuries to children of employees of the named insured was not effective to exclude North Pointe’s coverage for this claim.
 

 In June 2007, Mr. Hines allowed his seven-year-old son to ride on a John Deere tractor operated by Mr. Hines in the course and scope of his employment with M & S Tractor Services. M <& S Tractor Services is apparently a small, family corporation, and Mr. Hines is both president of the corporation and an employee. The young boy fell from the tractor, and one of the tractor’s wheels hit him. He sustained serious injuries.
 

 Aimee Hines, as parent and natural guardian, filed a lawsuit against M & S Tractor Services alleging that the tractor’s operator, her husband, had been negligent and that his negligence resulted in these injuries. The parties to this appeal agreed to stay that lawsuit while they determined whether North Pointe provided coverage for this occurrence. In the separate coverage lawsuit, the trial court declared that North Pointe provided coverage for this occurrence, and North Pointe now appeals to this court.
 

 The interpretation of an insurance contract is a matter of law; accordingly, we review the trial court’s rulings de novo.
 
 Kattoun v. N.H. Indem. Co.,
 
 968 So.2d 602, 604 (Fla. 2d DCA 2007). Several basic principles of insurance contract interpretation guide our analysis. Florida law requires courts to construe insurance contracts “in accordance with the plain language of the policies as bargained for by the parties.”
 
 Auto-Owners Ins. Co. v. Anderson,
 
 756 So.2d 29, 34 (Fla.2000). Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses.
 
 Fla. Farm Bureau Ins. Co. v. Birge,
 
 659 So.2d 310, 312 (Fla. 2d DCA 1994) (Parker, Acting C.J., dissenting) (citing
 
 Jefferson Ins. Co. of N.Y. v. Sea World of Fla. Inc.,
 
 586 So.2d 95 (Fla. 5th DCA 1991);
 
 U.S. Liab. Ins. Co. v. Bove,
 
 347 So.2d 678 (Fla. 3d DCA 1977)). However, “[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is consid
 
 *1283
 
 ered ambiguous.”
 
 Anderson,
 
 756 So.2d at 34. The court interprets ambiguous provisions “liberally in favor of the insured and strictly against the drafter.”
 
 State Farm Mut. Auto. Ins. Co. v. Fischer,
 
 16 So.3d 1028, 1031-32 (Fla. 2d DCA 2009) (citing
 
 Anderson,
 
 756 So.2d at 34).
 

 It is undisputed that North Pointe issued a comprehensive liability insurance policy to M & S Tractor Services for the period in which this accident happened. The policy provides coverage and a duty of defense for claims involving bodily injury and property damage as defined within the policy.
 
 [1]
 

 There is no dispute that the primary policy provides coverage for a bodily injury of the sort sustained by this young boy. Accordingly, to deny coverage North Pointe had the burden to establish that a specific exclusion removes this particular risk from coverage.
 

 The main body of North Pointe’s policy contains a standard exclusion for bodily injury to a child of an employee of the insured when the injury was a consequence of the employment. If that language applied in this case, it would appear to exclude coverage for this claim. But in this particular policy, a special endorsement has replaced the standard exclusion language. The endorsement in its entirety follows, but this case concerns primarily provision III.
 

 This insurance does not apply to:
 

 I.“Bodily Injury” to any employee of any insured, to any contractor hired or retained by or for any insured or to any employee of such contractor, if such claim for “bodily injury” arises out of and in the course of his employment or retention of such contractor by or for any insured, for which any insured may be liable in any capacity;
 

 II. Any obligation of any insurance to indemnify or contribute with another because of damages arising out of the “bodily injury”; or
 

 III.
 
 “Bodily injury” sustained by the spouse, child, parent, brother or sister of any employee of any insured, or of a contractor, or of an employee of a contractor of any insured as a consequence of “bodily injury” to such employee, contractor, or employee of such contractor, arising out of and in the course of such employment or retention by or for any insured.
 

 (Emphasis added.)
 

 The controversy in this case centers on the restrictive clause “as a consequence of ‘bodily injury5 to such employee, contractor, or employee of such contractor.” There are eight commas in the critical sentence that make it difficult to determine the subject that this clause restricts.
 

 North Pointe asserts that the plain language of this sentence means “[t]his insurance does not apply to ... [bjodily injury sustained by the ... child ... of an employee of any insured ... arising out of and in the course of employment or retention by or for any insured.” This is essentially the same language contained in the standard policy before the special endorsement superseded it. This reading of the exclusion requires that the restrictive clause apply only to the phrase, “of an employee of a contractor of any insured.” Thus, the following paragraph contains the
 
 *1284
 
 exclusion as read by North Pointe with underlining to highlight the proposed impact of the restrictive clause.
 

 This insurance does not apply to ... “[b]odily injury” sustained by the ... child ... of any employee of any insured, or of a contractor, or
 
 of an employee of a contractor of any insured as a consequence of “bodily injury’’ to such employee, contractor, or employee of such contractor,
 
 arising out of and in the course of such employment or retention by or for any insured.
 

 This interpretation arguably excludes coverage for the claim in this lawsuit, but it would exclude coverage for the children of employees of contractors only if those injuries were the consequence of injuries to “such employee, contractor, or employee of such contractor.” This interpretation would result in better coverage for the children of employees of contractors of the insured than for those of employees of the insured for no apparent reason.
 

 North Pointe’s interpretation would arguably make better sense if we were to substitute the word “by” for the word “of’ in two places:
 

 This insurance does not apply to ... “[bjodily injury” sustained by the spouse, child, parent, brother or sister of any employee of any insured, or of
 
 by
 
 a contractor, or of
 
 by
 
 an employee of a contractor of any insured as a consequence of “bodily injury” to such employee, contractor, or employee of such contractor, arising out of and in the course of such employment or retention by or for any insured.
 

 This interpretation, however, seems to overlap extensively with the exclusion in subsection I, and it would not address the children of contractors or- the children of employees of contractors. Of course, it also requires the court to substitute words in the contract in order to give it meaning.
 

 The appellees read the sentence as follows:
 

 This insurance does not apply to ... “[bjodily injury” sustained by the ... child ... of any employee of any insured ... as a consequence of “bodily injury” to such employee ..., arising out of and in the course of such employment or retention by or for any insured.
 

 Consequently, they argue that because the young boy’s injuries were not the result of an injury to an employee of an insured, the exclusion does not apply to his injuries. North Pointe argues that this interpretation is strained and that it would be illogical for the drafter of the policy to have intended to exclude payment for bodily injuries to children only if those injuries were in turn the result of bodily injury to the parent while at work. Such a factual situation might be possible, but North Pointe suggests it would be a rather bizarre accident. We agree that this exclusion is unlikely to address the underwriting concerns of the drafter. Nevertheless, we cannot simply ignore the restrictive clause. The drafter included it, and so we must attempt to give it meaning. The bizarre accident required under the appel-lees’ reading is comparable to the accident required under North Pointe’s reading as it relates to the children of employees of contractors. The appellees’ interpretation allows for all words in the sentence to remain unchanged and gives meaning to all of the drafter’s chosen words.
 

 After grappling with the cumbersome critical sentence, we conclude that the exclusion at issue here is ambiguous. The truth is the plethora of commas that punctuate this provision, along with the placement of the restrictive clauses, probably allows for no interpretation that has a clear meaning, and the provision is susceptible to more than one debatable meaning. The trial court properly concluded that the
 
 *1285
 
 special endorsement does not unambiguously exclude this claim.
 

 Affirmed.
 

 KHOUZAM and CRENSHAW, JJ., Concur.
 

 [1]
 

 . North Pointe issued this policy relying on ISO standard forms. The main section of the policy is identified as CG-00-001-12-04 under a 2003 copyright. The critical endorsement, entitled “Exclusion of Injury to Employees, Contractors and Employees of Contractors,” is identified as NP-08-16-02-06.