[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15867

_____

D. C. Docket No. 3:10-cv-00393-RBD-JBT

AXIS INSURANCE COMPANY,

Plaintiff-Appellee,

versus

FARAH & FARAH, P.A., EDDIE
FARAH, MICHAEL D. MARRESE,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 18, 2013)

Before JORDAN and ANDERSON, Circuit Judges, and ALBRITTON,* District
Judge.

_____
*Honorable William H. Albritton, III, United States District Judge for the Middle District of
Alabama, sitting by designation.

PER CURIAM:

This case involves construction of an insurance policy (including the application therefor) under Florida law.  See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000) ("Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties.")  We have had the benefit of oral argument, and have carefully studied the briefs and relevant parts of the record.  We conclude that the judgment of the district court should be affirmed.

Because the relevant facts were amply set forth in the district court's Order, and discussed fully at the very recent oral argument, we need not repeat them here. We turn immediately to the relevant arguments.  Appellants (herein referred to as the "Firm") argue that the term "persons proposed for coverage" in the Application does not include Abbott, whereas the term "Insured" as defined in the Policy itself does include Abbott.  Thus, the Firm argues that it was not required to inquire of Abbott with respect to his knowledge of potential claims, and thus Abbott's knowledge of the potential claim by the Turners does not fall within the exclusion that applies with respect to potential claims which were actually known by any Insured, but not revealed in the Application.  The significant problem with the Firm's argument is that its premise – that the scope of the term "persons proposed

2

for coverage" in the Application does not include Abbott – is flawed.   Contrary to the Firm's argument, we conclude that the term "persons proposed for coverage" in the Application does include Abbott.

The Application included the following instruction, upon which the Firm relies:

> [Y]ou hereby represent that your law firm and any person proposed for coverage ("the Insured"), after inquiry of all partners, officers and managers of the Insured, is not aware of any claims against the Insured or circumstances, incidents, disputes or fee problems that may give rise to a claim against the Insured, other than those disclosed in the application.

We conclude that the Firm could not have reasonably concluded that the list of the Firm's present members in the Application exhausted the scope of the "persons proposed for coverage" referred to in the above quotation.  By the very nature of a claims-made policy, the Policy would cover claims made during the Policy period attributable to the negligent conduct of a previously affiliated lawyer.  Therefore, inquiry with respect to awareness of potential claims which would be covered by the Policy (about which the above quoted provision is obviously referring) would necessarily include inquiry directed not only to current members of the Firm, but also inquiry directed to previously affiliated lawyers.[1]   Thus, the only reasonable

---

[1]     The Firm mischaracterizes the above quoted provision of the Application as instructing that inquiry (about potential claims) need be directed only to each current member of

3

interpretation of the term "person proposed for coverage" includes Abbott, as does the definition of the term "Insured" in the Policy. Accordingly, if there is any difference in the definition of the term "person proposed for coverage" in the Application, on the one hand, and, on the other hand, the definition of the term "Insured" in the Policy, any such difference is not relevant in this case because both terms include Abbott.

Moreover, there is nothing in the language of the Application that ties the list of current lawyers of the Firm to the scope of "persons proposed for coverage"; the instruction merely asks for a list of all current lawyers, to wit:

> Provide the names of all lawyers who are presently officers, partners, and employed lawyers, of counsels or retired partners of the Applicant and complete the information requested for each lawyer.

There is nothing in that language that suggests that the list of current lawyers exhausts the scope of "persons proposed for coverage."[2]

---

the Firm, and the Firm infers from that that only such current members are "persons proposed for coverage" whose knowledge of potential claims will trigger the exclusion. Contrary to the Firm's mischaracterization, the above quoted provision does not limit the appropriate inquiry to current members of the Firm. Rather, the above quoted provision instructs the applicant to inquire of "all partners, officers, and managers of the Insured." The instruction is equally silent with respect to inquiry of the current members of the Firm (other than officers, partners, and managers) and inquiry of previously affiliated lawyers. The instruction obviously assumed that the "officers, partners, and managers" of the Firm would make the appropriate inquiries – i.e. inquiries of persons whose negligent conduct could give rise to a claim, including obviously not only current members of the Firm but also previously affiliated members.

[2] The mere fact that the Application asks for a list of lawyers presently with the Firm does not have the significance urged upon us by the Firm. Indeed, the Application also asks

4

Because Abbott was both a "person proposed for coverage" as referred to in the Application, and also an "Insured," as defined to in the Policy definition,[3] there is no difference in the two categories that is relevant in this case. Because Abbott clearly had knowledge of a probable malpractice claim before the inception of the Policy on June 19, 2009,[4] and because Abbott was both a "person proposed for

---

about non-lawyer employees and predecessor firms.

[3]    For the first time on appeal, the Firm argues that Abbott was not an "Insured" as defined in the policy because the Firm is organized as a for-profit corporation, and for-profit corporations have no statutorily defined offices labeled as "managers" or "members." The Firm argues for the first time on appeal that, when the Policy defines an "Insured" as including "any lawyer previously affiliated ... as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee," the Policy's references to partner, etc., refer only to the statutorily defined offices in the various possible corporate and non-corporate statutory structures. Thus, the Firm argues that, as a for-profit corporation, there are no statutorily defined offices labeled as "manager" or "member," and that the Policy's reference to those offices refers exclusively to the statutorily defined offices of "manager" and "member" in limited liability companies. Because this argument was not made with sufficient clarity in the district court, we hold that the argument is waived.

Moreover, the Firm's argument is wholly without merit. The Policy language does not purport to limit its reach to narrow, statutory definitions of precise offices. In addition, even on appeal, the Firm's briefs do not point to an appropriate statutory definition of each of the offices listed in the Policy, and one or more does not have such a statutory definition (e.g., there is no statutory definition of "associate"). The Firm's position that, as a corporation, it cannot have a "manager" or "member" is a wholly unreasonable interpretation of the Policy. As the district court pointed out, putting the argument in the mouth of the insurance company demonstrates how unreasonable it is. See D.C. at 15, n.10 (imagining the reaction to the argument if Axis had tried to exclude Abbott from the definition of an "Insured."). We agree with the district court that "no reasonable mind . . . could find that Mr. Abbott was not a manager of the personal injury and wrongful death area of the practice or a member of that firm" (referring to the predecessor firm of Farah, Farah & Abbott, P.A.).

[4]    He had such knowledge at least by April 20, 2009, when he met with, and so advised the Turners.

5

coverage" and an "Insured," the prior knowledge exclusion was triggered. Accordingly, there is no coverage under the Policy for claims arising out of the underlying Turner litigation, and the appellee-insurance company is not obligated to defend or indemnify the Firm in the underlying Turner litigation.[5]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[5] Other issues raised on appeal by defendants-appellants are either without merit or moot in light of our decision.