[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 00-11611

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 07 2001
THOMAS K. KAHN
CLERK

D.C. Docket No. 99-00057-CV-4-WS

GEORGE N. KOIKOS,

Plaintiff-Appellant,

DEJUAN HARRIS,
BRIAN ARMSTRONG,

Intervenors-Appellants,

versus

THE TRAVELERS INSURANCE COMPANY,
CHARTER OAK INSURANCE COMPANY,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 7, 2001)**

Before ANDERSON, Chief Judge, MARCUS and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

On April 25, 1997, George Koikos rented his restaurant to the Florida A & M chapter of Alpha Kappa Psi Fraternity for a graduation party. During the party, Charles Bell and Antonio Anderson attempted to enter the restaurant. They were turned away after a heated exchange with several fraternity members who were collecting an admission charge for the affair. When Bell and Anderson returned a few minutes later, a fight broke out in the restaurant's lobby between Anderson and some of the fraternity members gathered there. After Anderson was knocked to the ground, Bell brandished a handgun and began firing as he helped Anderson to his feet.

Bell fired in two separate–but nearly concurrent–rounds. Brian Armstrong and D'Juan Harris were each hit by a single bullet while standing in the lobby. In addition, three other guests were injured. The record indicates that the shots injuring Armstrong and Harris came from the first round of shots.

Harris and Armstrong sued Koikos for negligently failing to provide adequate security. Koikos in turn filed suit in state court against The Travelers Insurance Company ("Travelers"), asking the court to declare that Armstrong's and Harris's injuries resulted from multiple "occurrences" under the terms of Koikos's liability insurance. After Travelers removed the case to federal district court,

Charter Oak Fire Insurance Company ("Charter Oak") was joined as a defendant.[1]

Ultimately, Harris and Armstrong intervened as plaintiffs. Travelers and Charter

Oak ("Defendants") argued that the injuries resulted from Koikos's alleged

negligence and that the negligence constituted a single "occurrence" under the

terms of the policy.

The insurance policy in question contains an "Each Occurrence Limit" of

$500,000, "regardless of the number of: (a) Insureds; (b) Claims made or 'suits'

brought; or (c) Persons or organizations making claims or bringing 'suits.'" The

Each Occurrence Limit is defined as the maximum Defendants would pay "because

of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'"

The policy further defines an "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."

The parties filed cross motions for summary judgment. In determining

whether the injuries resulted from a single occurrence, the district court concluded

that:

> [T]his court is convinced that, if the Florida Supreme Court were to
> decide the issue, it would hold that the "cause of an occurrence" is
> defined by referring to the events or series of events for which the
> insured is legally responsible. With the operative term so defined, it

---

[1]Charter Oak is the Travelers affiliate that issued the policy in question. Travelers filed a
motion to dismiss arguing that it was not a party to the policy. The district court denied the
motion and Travelers has not appealed that decision.

3

becomes clear that the entire shooting incident at issue in this case constituted a single occurrence.

Accordingly, the district court granted summary judgment to Defendants.

On appeal, Koikos argues that the district court incorrectly determined that the injuries to both Armstrong and Harris resulted from one occurrence. He contends that under American Indem. Co. v. McQuaig, 435 So. 2d 414 (Fla. Dist. Ct. App. 1983), each of Bell's shots constitutes a separate occurrence. In McQuaig, the insured shot two police officers during a fit of insanity. Id. at 415. The insured's homeowner's insurance policy provided a maximum coverage of $100,000 "per occurrence." Id. Because the policy at issue in McQuaig did not define the term "occurrence," the court was forced to "look elsewhere for appropriate definitions." Id.

The Florida District Court of Appeal employed the "cause theory" to determine whether more than one "occurrence" had taken place. Id. Under this theory, "the inquiry is whether 'there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages.'" Id. (quoting Bartholomew v. Ins. Co. of North America, 502 F. Supp. 246 (D.R.I. 1980)). In rejecting the insurance company's argument that the proximate cause of the injuries was the insured's insanity, the court noted that the insurance company "did not incur any liability because of [the insured's] insanity but rather liability

4

attached when [the insured] fired the shots which resulted in injury to the two deputies." Id. at 416. The court went on to conclude that each of the shots was a separate liability-creating occurrence subject to its own "per occurrence" limit. Id.

Unfortunately, for two reasons the McQuaig opinion does not resolve the issue in this case. First, it is unclear what effect–if any–this policy's definition of "occurrence" would have under Florida law. Second, it is unclear whether in using the "cause theory," we should focus on Koikos's alleged negligence or on Bell's separate gunshots. Furthermore, decisions of other Florida courts are difficult to square with the court's approach in McQuaig. See, e.g., Southern Int'l Corp. v. Poly-Urethane Indus., Inc., 353 So. 2d 646 (Fla. Dist. Ct. App. 1977) (holding that defective application of roof sealant to several buildings over the course of several days was a single occurrence). Because the parties have not cited nor have we uncovered any controlling Florida case directly on point, we seek the assistance of the Supreme Court of Florida in resolving this issue.[2]

Having concluded that this case involves an unanswered question of state law that is determinative of this appeal and having found no clear, controlling

---

[2]Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29 (Fla. 2000), cited as supplemental authority by Defendants, does not answer the issue raised by this case. In Anderson, the Florida Supreme Court compared a "per person/per accident" limit with a "per occurrence" limit, noting that a "per occurrence limit" applies "regardless of the number of persons involved in the accident . . . ." Id. at 32 n.3. The Florida Supreme Court, however, did not discuss how to determine whether a single occurrence or multiple occurrences occurred.

precedent in the decisions of the Supreme Court of Florida, we certify the following question of law to the Supreme Court of Florida for instructions:

> DID THE INJURIES SUSTAINED BY BRIAN ARMSTRONG AND D'JUAN HARRIS RESULT FROM A SINGLE OCCURRENCE OR MULTIPLE OCCURRENCES UNDER THE TERMS OF THE INSURANCE POLICY ISSUED TO KOIKOS BY DEFENDANTS?

In certifying this question, we do not intend the particular phrasing of it to limit the court in its consideration of the problem posed by the case. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.