George N. KOIKOS, Plaintiff–
Appellant,

DeJuan Harris, Brian Armstrong,
Intervenors–Appellants,

v.

The TRAVELERS INSURANCE COM-
PANY, Charter Oak Insurance Com-
pany, Defendants–Appellees,

No. 00–11611.

United States Court of Appeals,
Eleventh Circuit.

Feb. 7, 2001.

David K. Miller, Broad & Cassell, Rob-
ert S. Cox, Tallahassee, FL, for Appel-
lants.

John P. Joy, Hampton, NE, Jane
Anderson, Walton, Lantaff, Schroeder &
Carson, West Palm Beach, FL, Fred H.
Flowers, Tallahassee, FL, for Defendants–
Appellees.

Before ANDERSON, Chief Judge, and
MARCUS and KRAVITCH, Circuit
Judges.

KRAVITCH, Circuit Judge:

On April 25, 1997, George Koikos rented
his restaurant to the Florida A&M chapter
of Alpha Kappa Psi Fraternity for a grad-
uation party. During the party, Charles
Bell and Antonio Anderson attempted to
enter the restaurant. They were turned
away after a heated exchange with several
fraternity members who were collecting an
admission charge for the affair. When
Bell and Anderson returned a few minutes
later, a fight broke out in the restaurant's
lobby between Anderson and some of the
fraternity members gathered there. After
Anderson was knocked to the ground, Bell
brandished a handgun and began firing as
he helped Anderson to his feet.

Bell fired in two separate—but nearly
concurrent—rounds. Brian Armstrong
and DeJuan Harris were each hit by a
single bullet while standing in the lobby.
In addition, three other guests were in-
jured. The record indicates that the shots
injuring Armstrong and Harris came from
the first round of shots.

Harris and Armstrong sued Koikos for
negligently failing to provide adequate se-
curity. Koikos in turn filed suit in state
court against The Travelers Insurance
Company ("Travelers"), asking the court
to declare that Armstrong's and Harris's
injuries resulted from multiple "occur-
rences" under the terms of Koikos's liabili-
ty insurance. After Travelers removed
the case to federal district court, Charter
Oak Fire Insurance Company ("Charter
Oak") was joined as a defendant.[1] Ulti-
mately, Harris and Armstrong intervened
as plaintiffs. Travelers and Charter Oak
("Defendants") argued that the injuries re-
sulted from Koikos's alleged negligence
and that the negligence constituted a sin-
gle "occurrence" under the terms of the
policy.

The insurance policy in question con-
tains an "Each Occurrence Limit" of
$500,000, "regardless of the number of: (a)
Insureds; (b) Claims made or 'suits'
brought; or (c) Persons or organizations
making claims or bringing 'suits.'" The
Each Occurrence Limit is defined as the
maximum Defendants would pay "because
of all 'bodily injury' and 'property damage'
arising out of any one 'occurrence.'" The
policy further defines an "occurrence" as
"an accident, including continuous or re-
peated exposure to substantially the same
general harmful conditions."

---

1. Charter Oak is the Travelers affiliate that
issued the policy in question. Travelers filed
a motion to dismiss arguing that it was not a
party to the policy. The district court denied
the motion and Travelers has not appealed
that decision.

The parties filed cross motions for summary judgment. In determining whether the injuries resulted from a single occurrence, the district court concluded that:

> [T]his court is convinced that, if the Florida Supreme Court were to decide the issue, it would hold that the "cause of an occurrence" is defined by referring to the events or series of events for which the insured is legally responsible. With the operative term so defined, it becomes clear that the entire shooting incident at issue in this case constituted a single occurrence.

Accordingly, the district court granted summary judgment to Defendants.

On appeal, Koikos argues that the district court incorrectly determined that the injuries to both Armstrong and Harris resulted from one occurrence. He contends that under *American Indem. Co. v. McQuaig*, 435 So.2d 414 (Fla.Dist.Ct.App.1983), each of Bell's shots constitutes a separate occurrence. In *McQuaig*, the insured shot two police officers during a fit of insanity. *Id.* at 415. The insured's homeowner's insurance policy provided a maximum coverage of $100,000 "per occurrence." *Id.* Because the policy at issue in *McQuaig* did not define the term "occurrence," the court was forced to "look elsewhere for appropriate definitions." *Id.*

The Florida District Court of Appeal employed the "cause theory" to determine whether more than one "occurrence" had taken place. *Id.* Under this theory, "the inquiry is whether 'there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damages.'" *Id.* (quoting *Bartholomew v. Ins. Co. of North America*, 502 F.Supp. 246 (D.R.I.1980)). In rejecting the insurance company's argument that the proximate cause of the injuries was the insured's insanity, the court noted that the insurance company "did not incur any liability because of [the insured's] insanity but rather liability attached when [the insured] fired the shots which resulted in injury to the two deputies." *Id.* at 416. The court went on to conclude that each of the shots was a separate liability-creating occurrence subject to its own "per occurrence" limit. *Id.*

Unfortunately, for two reasons the *McQuaig* opinion does not resolve the issue in this case. First, it is unclear what effect-if any-this policy's definition of "occurrence" would have under Florida law. Second, it is unclear whether in using the "cause theory," we should focus on Koikos's alleged negligence or on Bell's separate gunshots. Furthermore, decisions of other Florida courts are difficult to square with the court's approach in *McQuaig*. See, e.g., *Southern Int'l Corp. v. Poly–Urethane Indus., Inc.*, 353 So.2d 646 (Fla.Dist.Ct.App.1977) (holding that defective application of roof sealant to several buildings over the course of several days was a single occurrence). Because the parties have not cited nor have we uncovered any controlling Florida case directly on point, we seek the assistance of the Supreme Court of Florida in resolving this issue.[2]

Having concluded that this case involves an unanswered question of state law that is determinative of this appeal and having found no clear, controlling precedent in the decisions of the Supreme Court of Florida, we certify the following question of law to the Supreme Court of Florida for instructions:

DID THE INJURIES SUSTAINED BY BRIAN ARMSTRONG AND DE-JUAN HARRIS RESULT FROM A SINGLE OCCURRENCE OR MULTI-

---

**2.** *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla.2000), cited as supplemental authority by Defendants, does not answer the issue raised by this case. In *Anderson*, the Florida Supreme Court compared a "per person/per accident" limit with a "per occurrence" limit, noting that a "per occurrence limit" applies "regardless of the number of persons involved in the accident...." *Id.* at 32 n. 3. The Florida Supreme Court, however, did not discuss how to determine whether a single occurrence or multiple occurrences occurred.

PLE OCCURRENCES UNDER THE TERMS OF THE INSURANCE POLICY ISSUED TO KOIKOS BY DEFENDANTS?

In certifying this question, we do not intend the particular phrasing of it to limit the court in its consideration of the problem posed by the case. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.