# Third District Court of Appeal

## State of Florida

Opinion filed February 10, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-720
Lower Tribunal No. 11-7085

_____


**Kerry Taylor,**

Appellant/Cross-Appellee,

vs.

**Admiral Insurance Company,**

Appellee/Cross-Appellant.


An appeal from the Circuit Court for Miami-Dade County, Spencer Eig, Judge.

O'Brien & Solomon and Vincent O'Brien and Julie Rannik Houston (Ft. Lauderdale), for appellant/cross-appellee.

Ritter Chusid and Shawn R. Horwick (Coral Springs), for appellee/cross-appellant.


Before SUAREZ, C.J., and LAGOA and LOGUE, JJ.

SUAREZ, C.J.

Appellant Kerry Taylor ("Taylor"), as assignee of Vizcaya Museum & Gardens, Villa Vizcaya and Miami-Dade County (collectively the "Assignors"),

appeals summary judgment entered in favor of Appellee Admiral Insurance Company ("Admiral") on her claims of breach of contract, common law bad faith and statutory bad faith. Admiral cross appeals the trial court's underlying finding that the Assignors were additional insureds under the insurance policy at issue in this action. We affirm the trial court's finding that the Assignors are each additional insureds under the Admiral Policy, but we reverse the summary judgment entered in favor of Admiral as we find that there is coverage for Taylor's claim based on the Separation of Insureds provision of the policy.

In April 2006 Taylor attended a private event at Villa Vizcaya[1], which was hosted by Mears Acquisition Company d/b/a Hello Florida Inc. ("Hello Florida"). At the time of the incident, Taylor was employed by Hello Florida. While leaving the event Taylor slipped and fell, sustaining injury. Admiral had issued a general liability policy to Hello Florida covering the pertinent time frame. Brown & Brown, Inc. ("Brown & Brown") was Hello Florida's agent for the policy. The parties disagreed about whether Villa Vizcaya was an additional insured under the policy at the time of the incident.

Taylor sued the County as the result of her injuries and later amended the Complaint to include Villa Vizcaya. When the County requested a defense and indemnity from Admiral, Admiral declined stating that "none of the parties named

---

[1] Vizcaya Museum & Gardens is an attraction in Miami-Dade County which is comprised of an estate known as Villa Vizcaya and ten acres of gardens. We refer to the villa and gardens collectively as "Villa Vizcaya" herein. Villa Vizcaya is owned and operated by Miami-Dade County (the "County).

in the litigation are insureds under the policy." Admiral did not set forth any other grounds for refusing to defend. After Admiral refused to defend, Taylor and Villa Vizcaya and the County entered into a Coblentz[2] agreement under which Taylor was paid $25,000 and a $550,000 consent judgment was agreed to. Villa Vizcaya and the County assigned all of their rights under the policy to Taylor.

Taylor filed a Civil Remedy Notice of Insurer Violations with the Florida Department of Financial Services on August 4, 2010 and then filed suit against Admiral for breach of contract, common law bad faith and statutory bad faith. After the action was removed to federal court, Admiral alleged, for the first time, that Brown & Brown was not authorized to bind coverage for it. Admiral argued that it is an excess and surplus lines insurer which only sells products through its authorized excess lines brokers and that Brown & Brown was not one of those brokers. Admiral moved for summary judgment on that basis, but Taylor amended the Complaint to allege a claim of fraud against Brown & Brown and the matter was remanded to state court.

Later discovery showed that Brown & Brown was the agent for Hello Florida and had worked with Peachtree Special Risk ("Peachtree"), undisputedly an authorized Admiral broker, to obtain and to bind the coverage for Hello Florida. It appears that Brown & Brown requested that Peachtree bind coverage for Hello

[2] Coblentz v. Am. Sur. Co. of New York, 416 F.2d 1059 (5th Cir. 1969). A Coblentz agreement is a negotiated settlement in which the defendant agrees to a consent judgment and assigns, to the injured party, any cause of action the defendant had against the defendant's insurer.

3

Florida in 2005 after being assured by Peachtree that the policy included coverage for blanket additional insureds. At the instruction of Peachtree, Brown & Brown issued a Certificate to Peachtree naming Villa Vizcaya as an additional insured. During the pertinent period, Brown & Brown issued 90 such Certificates of Insurance in connection with Hello Florida's business, each of which was forwarded to Peachtree. Prior to Taylor's injury, no one from Admiral or Peachtree ever advised Brown & Brown that it had no authority to issue the additional insured Certificates.

After remand, Taylor moved for summary judgment arguing that recovery under the Coblenz agreement was proper, that Villa Vizcaya and the County were additional insureds, that denial of coverage was improper and that Admiral was in breach of contract and in bad faith. In response, Admiral cross-moved for summary judgment claiming that coverage was excluded by the Absolute Employer's Liability provision of the policy.

The Absolute Employer's Liability provision states:

> **e. Employer's Liability**
> "Bodily injury" to:
>
> (1) Any "employee" of **any insured** arising out of and in the course of:
>
> > (a) Employment by **any insured**; or
> >
> > (b) Performing duties related to the conduct of **any insured's** business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether **any insured** may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. (emphasis supplied).

After hearing, the trial court concluded that Villa Vizcaya and the County were additional insureds under the Admiral policy based on the evidence submitted in connection with the opposing summary judgment motions. We affirm that conclusion.

On the other hand, we find that the trial court was not correct in its conclusion that coverage was excluded by the Absolute Employer's Liability provision. If that provision was the only portion of the policy in issue, the trial court would have been correct that there was no coverage for Hello Florida because the claim was brought against it by one of its own employees. However, in this case other entities, Villa Vizcaya and the County, are additional insureds under the policy. The question which arose, and which the trial court did not properly consider, is whether there was coverage for those entities with respect to Taylor's claim. Under the Separation of Insureds provision of the policy, we conclude that there was coverage for those entities. The severability or Separation of Insureds provision states:

7. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned this Coverage Part to the first Named Insured, this insurance applies:

a. As if each named insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

The Separation of Insureds provision operated to permit coverage for Taylor's claim against Villa Vizcaya and the County, even if she was on location because of her employment with Hello Florida. Neither Villa Vizcaya nor the County were Taylor's employer and under the Separation of Insureds provision, each was separately insured by Admiral and subject to claim by non-employee Taylor.

As stated in Evanson Ins. Co. v. Design Build Interamerican, Inc., 569 Fed. Appx. 739 (11th Cir. 2014):

> Florida courts have explained that severability clauses, like the separation of insureds provision here, create separate insurable interests in each individual insured under a policy, such that the conduct of one insured will not necessarily exclude coverage for all other insureds. See Mactown, Inc. v. Cont'l Ins. Co., 716 So. 2d 289, 292–93 (Fla. 3d DCA 1998).
>
> * * *
>
> [I]n Premier [Ins. Co. v. Adams, 632 So. 2d 1054 (Fla. 5th DCA 1994)], the Fifth District considered the effect of a severability of insurance clause in a homeowner's policy on the policy's exclusionary clause. Id. at 1056. The severability clause provided that '[t]his insurance applies separately to each insured[,]' id., and the exclusionary clause precluded coverage for bodily injury

6

'which is expected or intended by any insured,' id. at 1055. The Fifth District first noted that there were no Florida cases dealing with the 'interaction of exclusionary clauses and severability clauses or the term 'any insured' as contrasted to 'an insured' or 'the insured,' in an exclusionary clause' id., and thus looked to decisions in several other jurisdictions, id. at 1056–57. The Fifth District found persuasive the reasoning of the Massachusetts Supreme Court that the severability clause created 'a separate insurance policy for each insured,' and thus the use of the term 'any insured' in the exclusionary provision of the policy 'referred only to persons claiming coverage under the policy.' Id. at 1056 (describing the reasoning of Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 496 N.E.2d 158 (1986)). The Fifth District agreed with the Massachusetts Supreme Court that this interpretation 'gave reasonable meaning to both the exclusionary clause and the severability clause[,]' which it found preferable 'to one which leaves a part useless or inexplicable.' Id. at 1057. Moreover, the Fifth District concluded that, to the extent the severability and exclusionary provisions created an ambiguity, the policy had to be construed strictly against the insurer as the drafter of the policy. Id. Noting that the policy at issue 'contains an exclusion for the intentional acts of 'any insured' and contains a severability clause creating a separate insurable interest in each individual insured,' the Fifth District in Premier held that the 'the most plausible interpretation is that the exclusionary clause is to exclude coverage for the separate insurable interest of that insured who intentionally causes the injury.' Id. The reasoning and holding of Premier govern our interpretation of the severability and exclusionary provisions of [the] CGL policy in this case. . . . . Because we are applying Florida law, we must interpret this language as requiring that each insured has separate insurance coverage, Premier, 632 So. 2d at 1057, and therefore read all provisions of the policy, including the employer's liability exclusion, as if coverage is for only [each insured]. [] [W]hen applying this construction of the severability provision to the employer's liability exclusion in the [] policy, we conclude that coverage is

7

not precluded for [other insureds]. The exclusion states that the insurance does not apply to bodily injury to '[a]n 'employee' of *any insured*." (Emphasis added). Reading this provision as if [one insured] were the only insured, coverage would not be precluded because [the tortfeasor] is not an employee of [that insured]. The same construction is true for [the other insureds]. Moreover, we note that this reading does not render the inclusion of the employer's liability exclusion superfluous because, as [the claimant] concedes, the exclusion applies to [the employer for the tortfeasor].

* * *

Essentially, the exclusion's use of the term 'any insured' when read in conjunction with the severability clause creates a class of insureds who are excluded from coverage, i.e. employers of the injured claimant. Accordingly, as to other insureds who are not in the class of excludable insureds, but against whom a claim could be asserted, i.e. non-employers of the injured claimant, coverage is not precluded.

* * *

Significantly, the Fifth District in Premier concluded that the severability clause, in and of itself, created a separate insurable interest in each individual insured under the policy, which when applied to the policy's use of the term "any insured" means that each insured must be treated independently from other insureds. This principle is applicable regardless of the type of insurance policy at issue. []Another Florida appellate court has applied a severability of insurance clause to an employee exclusion in an automobile liability policy and concluded that '[t]he exclusion as to employees of the insured is thus limited and confined to the employees of the employer against whom the claim is asserted.' Shelby Mut. Ins. Co. v. Schuitema, 183 So. 2d 571, 574 (Fla. 4th DCA 1966), approved 193 So. 2d 435 (Fla. 1967). Like the Fifth District in Premier, the Fourth District in Schuitema recognized that 'the principle that the severability of interests clause must be construed as intended to treat each insured independently from the other insured' must be applied to other pertinent provisions of the policy. Id. Specifically, when applying this principle to the

8

employee bodily injury exclusion, the court in Schuitema held that 'where the claimant is not the employee of the additional insured against whom the claim is made, then there is coverage.' Id.

Id. at 742-43.

Applying those principles here, coverage for Taylor was not precluded with respect to Villa Vizcaya or the County because neither was her employer. While the Absolute Employer's Liability Provision prevented Taylor from making a claim against Hello Florida, the Separation of Insureds provision permitted her to pursue her claims against additional insureds Villa Vizcaya and the County.

We therefore reverse the summary judgment entered for Admiral and remand with instructions to the trial court to grant Taylor's opposing summary judgment motion.

Affirmed in part, reversed in part and remanded with instruction to enter summary judgment for Taylor.