DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ARTHUR AIELLO, MICHELLE AIELLO,**
and **ARTHUR JOSEPH AIELLO,**
Appellants,

v.

**ASI PREFERRED CORP., CARLYN FAGARASS,**
and **RUSSELL BOURNE,**
Appellees.

No. 4D20-1078

[March 31, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Barbara W. Bronis, Judge; L.T. Case No. 56-2019-CA-000443AXXXHC.

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Vargas & Serafin, P.A., West Palm Beach, and Robin A. Blanton of Robin A. Blanton, P.A., Vero Beach, for appellants.

John Bond Atkinson and Amanda Forti of Atkinson, P.A., Miami, for appellee ASI Preferred Corp.

GROSS, J.

Arthur and Michelle Aiello and their son, Arthur Joseph Aiello ("AJ"), defendants below, appeal a final summary judgment entered in favor of their homeowners' insurance provider, ASI Preferred Corp., after the trial court determined that a watercraft exclusion in the Aiellos' homeowners' insurance policy precluded coverage for injuries sustained by a third party in a boating accident. We affirm because the plain meaning of the exclusion applied to all of the insureds in this case, not just one of them.

### *Facts Regarding the Boating Accident*

Mr. Aiello is the sole owner of a 17-foot long TwinVee boat powered by a single 50-horsepower outboard motor. AJ had his father's permission to use the boat; he was the principal operator of the boat, using it nearly

every day. AJ also had his father's permission to let other people operate the boat.

In December 2018, AJ embarked on his father's boat with three friends, Russell Bourne, Carlyn Fagarass, and a young woman. Mr. Aiello was not present on the boat. All members of this group were under the age of 21. The boating party consumed alcoholic beverages on the boat before the accident: AJ had four beers, and the three friends also consumed alcoholic beverages.

Sometime after 7 p.m., the boating party headed back to shore to drop Bourne off at a bait shop. On the way, Fagarass asked to drive the boat. AJ allowed her to do so, even though it was dark. He knew that Fagarass had consumed an unknown amount of alcohol. He had never seen her pilot a boat, and he did not know whether she was familiar with operating a boat.

Fagarass crashed the boat into an unlit channel marker, ejecting Bourne and AJ. Bourne sustained significant injuries to his head and face. AJ and Fagarass pulled Bourne back into the boat. AJ piloted the boat to the bait shop, where they were met by police and emergency services.

### *The Pertinent Provisions of the Homeowners' Insurance Policy*

At the time of the accident, the Aiellos had a homeowners' insurance policy with ASI. It is undisputed that the Aiellos and AJ were all "insureds" under the policy. The policy maintained Personal Liability coverage of $500,000 per occurrence and Medical Payments to Others coverage of $2,500 per person. The policy limits these coverages under a "Watercraft Exclusion" that has four narrow exceptions for certain watercraft:

### SECTION II – EXCLUSIONS

**1. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

* * *

(g) Arising out of:
(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

2

(2) The entrustment by *an "insured"* of an excluded watercraft described below to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of the child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor including "personal watercraft", or are sailing vessels, whether owned by or rented to *an "insured."* This exclusion does not apply to watercraft*:*

(1)  That are not sailing vessels and are powered by:
(a) Inboard or inboard-outdrive engine or motor power of 50  horsepower or less not owned by *an "insured"*;
(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower *not owned by or rented to an "insured"*;
(c) One or more outboard engines or motors with 25 total horsepower or less;
(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is *not owned by an "insured"*;

(the "Watercraft Exclusion") (emphasis added).

The policy contains a severability clause, which states:

### SECTION II – CONDITIONS

**2. Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

### *The Procedural History of the Underlying Litigation*

Bourne sued Mr. Aiello, AJ, and Fagarass for the injuries he sustained in the accident. ASI brought a separate action for a declaratory judgment on the issue of coverage. Fagarass did not defend the declaratory action and a default was entered against her.

ASI and the Aiellos both filed competing motions for summary judgment in the declaratory action. ASI argued, among other things, that

3

the Watercraft Exclusion applied such that there was no coverage, so ASI had no duty to defend or indemnify the Aiellos with respect to the underlying negligence action.

In support of their motion for summary judgment, the Aiellos raised the issue that they urge in this appeal—that the Watercraft Exclusion and its exceptions, when read in conjunction with the policy's severability clause, afforded coverage to AJ. Hours before a hearing on their motion, Bourne voluntarily dismissed Mr. Aiello from the underlying negligence suit without prejudice.

The circuit court granted final summary judgment for ASI, ruling that "the watercraft exclusion precludes coverage."

On appeal, the Aiellos argue that the policy's severability clause combines with the Watercraft Exclusion to create an ambiguity that must be construed in favor of the Aiellos to provide coverage. The Aiellos contend that the severability clause creates separate coverage in favor of each insured—meaning that AJ and Mrs. Aiello's coverage are separate from Mr. Aiello's coverage—so that the boat and engine in this case fell within the exception to the watercraft exclusion, because AJ did not own the boat.

### The Circuit Court Properly Concluded that Coverage of the Boating Accident Was Precluded by the Watercraft Exclusion of ASI's Homeowners' Insurance Policy

1. The plain language of the policy precludes coverage

"An insurance contract must be construed in accordance with the plain language of the policy." *Landmark Am. Ins. Co. v. Pin-Pon Corp.*, 155 So. 3d 432, 437 (Fla. 4th DCA 2015). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).

"If the terms of a contract are clear and unambiguous, the court is bound by the plain meaning of those terms." *Id.* "If, however, the relevant policy language is susceptible to more than one *reasonable* interpretation, one providing coverage and another limiting coverage, the policy is ambiguous." *Id.* (emphasis added). "Where policy language is ambiguous, it 'should be construed liberally in favor of the insured and strictly against the insurer.'" *Id.* (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998)). "To find in favor of the insured on this

basis, however, the policy must actually *be* ambiguous." *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010). A provision is not ambiguous "simply because [it] is complex and requires analysis for application . . . ." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

It is undisputed that the Aiellos and AJ are all "insureds" under the policy, that Mr. Aiello was the sole owner of the boat, and that coverage is precluded as to him under the Watercraft Exclusion. The disputed issue is whether AJ—an insured who does not own the boat—has coverage under an exception to the Watercraft Exclusion. Because the TwinVee was powered by a single 50-horsepower outboard motor, the only exception that could apply is contained in subsection (1)(d).

Subsection (1)(d) states that the Watercraft Exclusion does not apply "if the outboard engine or motor is not owned by an insured." That language is unambiguous. The boat and engine were owned by Mr. Aiello, "an insured." The subsection (1)(d) exception to the Watercraft Exclusion is therefore inapplicable.

2. <u>The severability clause does not render the Watercraft Exclusion ambiguous</u>

The Aiellos assert that the unambiguous language of subsection (1)(d) is rendered ambiguous when read together with the policy's severability clause. They point to this language: "This insurance applies separately to each 'insured.'" Because of this sentence, they posit that the TwinVee maintains a dual existence under the policy. Simultaneously, it is an "excluded watercraft" because it was owned by an insured, Mr. Aiello, and it is not an "excluded watercraft" because it was not owned by another insured (AJ). They contend that the severability clause created a reasonable expectation that each insured's interests are separately covered, so that the exclusion applies only to the actual owner of the boat.

To support their position, the Aiellos primarily rely on *Premier Insurance Company v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994). There, the Fifth District considered the effect of a severability clause in a homeowners' insurance policy on the policy's exclusionary clause. That case is distinguishable based on the difference in the policy language and the nature of its exclusion, which was based upon the conduct of one of the insureds.

In *Adams*, the parents of a minor brought a count for negligent supervision against the appellees, alleging that the appellees' son had sexually abused their son. *Id.* at 1055. The appellees demanded that their

homeowners' insurance carrier defend them, and the insurance carrier filed a complaint for a declaratory judgment. *Id.*

The policy at issue in *Adams* included the appellees' minor son as an insured. *Id.* at 1057. The policy contained an exclusionary clause which precluded coverage for bodily injury "which is expected or intended by any insured" and a severability clause which stated that "[t]his insurance applies separately to each insured." *Id.* at 1055–56. The trial court entered a final declaratory judgment finding that the insurance carrier had an obligation to defend the appellees on the negligent supervision count. *Id.* at 1055.

On appeal, the insurance carrier argued that the term "any insured" in the exclusionary clause "exclude[d] all persons insured under the policy for underlying intentional acts notwithstanding the language of the severability clause." *Id.* at 1056. The appellees responded that the construction urged by the insurance carrier "would make the severability clause a nullity and render it superfluous and at the very least the exclusionary clause is ambiguous and should be construed in favor of the insured." *Id.*

The Fifth District affirmed the trial court's ruling that the insurance company had a duty to defend the parents against the claim that they had negligently supervised their son. *Id.* at 1057. The court concluded that "the most plausible interpretation is that the exclusionary clause is to exclude coverage for the separate insurable interest of that insured who intentionally causes the injury." *Id.* The court reasoned that the severability clause created a "separate insurable interest in each individual insured." *Id.* Because the parents had committed no act that fell under the exclusion, the Fifth District held that the exclusionary clause did not apply to them. *Id.*

The *Adams* court's interpretation of the policy was not unreasonable— the policy insured against negligent acts, and the parents were sued for their negligence in supervising their son. The *Adams* policy was ambiguous because it did not plainly exclude coverage for negligence in failing to prevent the intentional act of another.

Unlike the exclusionary clause in *Adams*, the Watercraft Exclusion here at issue does not turn on intentional acts committed by "any insured." Rather, the exclusion focuses on the characteristics of the vessel involved in the accident, which are the same for all the insureds. The narrow exceptions to the Watercraft Exclusion are based on the motor (inboard or outboard), the amount of horsepower (25 or less, more than 25, 50 or less,

6

or more than 50), and ownership interest (not owned by "an insured," not owned by or rented to "an insured", or no ownership interest specified).

Different than the exclusionary clause in *Adams*, the exceptions to the Watercraft Exclusion are not dependent on the insured who seeks coverage, but on the nature of the watercraft at issue. For this reason, the Aiellos' interpretation of the Watercraft Exclusion does not give a "reasonable meaning" to both the severability clause and the exclusionary clause. The Aiellos' interpretation of the policy would rewrite a homeowners' insurance policy, with a broad Watercraft Exclusion and a few narrow exceptions, into a policy with expanded watercraft liability, where the narrow exception applied only to the boat owner. Unlike the situation in *Adams*, where the parents were sued for their own negligence, there is no logical reason why a boat owner in this case should be treated differently than the other insureds under the policy. Unlike the situation in *Adams*, the Aiellos are not urging this court to adopt the "most plausible interpretation" of the policy. *Id.* at 1057.

Although an ambiguous insurance policy provision must be construed in favor of coverage, ambiguity arises only where the contested "policy language is susceptible to more than one *reasonable interpretation,* one providing coverage and the other limiting coverage." *Swire Pac. Holdings*, 845 So. 2d at 165 (emphasis added). Here, the severability clause does not render the Watercraft Exclusion ambiguous, as the Aiellos contend, because the interpretation they advance is not reasonable.

The interpretation of the policy the Aiellos advance contravenes the well-established principles that an insurance policy must be construed as a whole and in consideration of the purpose and expectations of homeowners' insurance the parties bargained for. *See State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 401 (Fla. 4th DCA 1996) ("Insurance contracts are construed in accordance with the plain language of the polices as bargained for by the parties.") (quoting *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)).

The Aiellos' approach to the policy wields the severability clause to rewrite the subsection (1)(d) exclusion so that coverage depends not on the characteristics of the vessel involved in the loss, but on the insured who is seeking coverage. That exclusion reads:

> (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by <u>an</u> "insured";

7

The Aiellos want to rewrite the exclusion by adding the language in bold below:

> d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by **the insured who is seeking coverage.**

However, we may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014).

The Aiellos also rely upon *Taylor v. Admiral Ins. Co.*, 187 So. 3d 258 (Fla. 3d DCA 2016), and *Shelby Mutual Ins. Co. v. Schuitema*, 183 So. 2d 571 (Fla. 4th DCA 1966). Both cases are distinguishable because they involve different policy language than that at issue in this case.

Unlike *Taylor*, in this case, there is no language providing that coverage is determined "[a]s if each named insured were the only Named Insured," and "[s]eparately to each insured against whom claim is made or 'suit' is brought." 187 So. 3d at 260. Additionally, different than *Schuitema*, here there is no language further defining "insured" as having several meanings rather than a collective meaning. 183 So. 2d at 572. Thus, while the separation of insureds/severability of interests provisions in *Taylor* and *Schuitema* specifically mandated that each insured sought to be held liable should be treated as "the" sole "insured" for the purpose of determining coverage, the same is not true here.

Furthermore, unlike in *Schuitema*, the Watercraft Exclusion and severability clause at issue in this case use the term "*an* insured" rather than "*the* insured." Courts have repeatedly recognized that "an insured" and "the insured" are distinct and have separate meanings; "an" means "any" and "the" means a specific insured. *See, e.g., Retreat at Port of the Islands, LLC v. Port of the Islands Resort Hotel Condo. Ass'n,* 181 So. 3d 531, 533 (Fla. 2d DCA 2015) ("Linguistically, 'a' refers to 'any or each' of a type when used with a subsequent restrictive modifier."); *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) ("In common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'"); *Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So. 2d 827, 829 (Fla. 4th DCA 2004) ("'The' is a definite article 'used as a function word with a noun modified by an adjective or by an attributive noun to limit the application of the modified noun to that specified by the adjective or the attributive

noun' . . . . As such, 'the' limits that to which it refers to only one, to the exclusion of all others.").

Here, the Watercraft Exclusion establishes a well-defined scheme for limited coverage of certain boating accidents in a homeowners' policy. This is a sensible scheme because a homeowner who owns a boat is more likely to be involved in a boating accident than a homeowner who does not own a boat and who may occasionally rent or borrow a boat. Coverage of boats "not owned by an insured" is a limited form of risk appropriate to include in a homeowner's policy. It is unlikely that parties to a policy would include clauses in a policy allowing boating claims under narrow circumstances, but intend those exclusions to apply to one family member, while having no impact on other family members who are also insureds under the policy. *See Cal. Cas. Ins. Co. v. Northland Ins. Co.*, 56 Cal. Rptr. 2d 434, 442 (Cal. Ct. App. 1996).

### *Conclusion*

Because we find that the Watercraft Exclusion precluded coverage in this case, we decline to reach the issue of whether coverage was also precluded under the "Criminal or Illegal Activity Exclusion" in the policy.

*Affirmed.*

KUNTZ and ARTAU, JJ., concur.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**